May it please the Court. My name is Robert Peck. I'm here on behalf of the Plaintiff Appellants, Margaret Lucas. In United States v. Wong, the U.S. Supreme Court changed everything we understood about jurisdiction and the time limits under the Federal Court Claims Act. Longstanding and weighty case law across the nation had held that these time limits were limits as a condition of sovereign immunity were required. That all was rendered a nullity just a little more than a year ago. Instead, these time limits were regarded as claims processing rules that didn't deprive a court of jurisdiction that was subject to judicial revision in the exercise of equitable powers. All that really grants you, though, is the possibility of arguing equitable stopping. Otherwise, these rules are still rules established by Congress and our firm, and they intended them to be applied the way they wrote them. So it seems to me you don't gain much by saying it's jurisdictional or non-jurisdictional. What you gain is the right to argue that the time can be extended under principles of equitable stopping. Your Honor, I don't disagree with that, but it does place the United States in the same position as a private citizen. And if these cases were brought against the doctors as individuals instead of the United States substituted as defendants, there would be no doubt that these or that these cases could go forward, that this case could go forward because of the ---- Well, that's not that. If you brought it into Maryland State court. Right. And, sure, the Tort Claims Act incorporates the substance of the Maryland State law, but it's pretty clear that the limitations is a Federal, Federally established limitations, and so we need to construe 2401 as a Federal statute of limitations established by Congress and figure out what that means. Right. And it's our contention that, first of all, the provision in the Maryland law that tolls the statute of limitations is part of that substantive precondition to bringing a lawsuit. And ---- It would be absent of Federal statute. In other words, you could argue that the limitations and the law in Maryland, which talks about the commencement of an action and all this, goes with the substantive Maryland law, but there is, apart from that, there is a Federal statute of limitation that says you have to bring an action in a Federal court. And, of course, that's what the recent Supreme Court referred to. It wasn't a holding, but they said you had to bring your action in Federal court in a timely manner. Yes. So did our case in Henderson say that? Well, because the Maryland procedure is mandatory as a precondition to getting to court and is part and parcel of the overall scheme that has to be complied with, our contention is that the compliance with Maryland cannot oust someone from the ability to bring this Federal tort claims action. Here, our client complied with every requirement of Maryland law as it is laid out. But that argument really doesn't follow in any other situation. I mean, you can comply with State law to beat the band, and if you don't comply with Federal law and Federal law governs, you're out of luck. Well, I would contend that as a matter of due process under the Logan case that we cited, that State law cannot oust someone from jurisdiction because the fact is that it is because you are following that procedure that you cannot get into Federal court unless you have followed that procedure, then there is a due process problem in being required to follow the procedure as a ticket to essentially go to Federal court. I can't figure out what you're saying because Congress decided to waive sovereign immunity with respect to the commencement of torts, and they set the conditions for it, and in 2401, they set out the criteria for bringing a Federal action against you can only sue the Federal government in Federal court, and you could bring an action against the United States in accordance with 2401B. And I don't see how that's a due process argument. Was Congress off-base in establishing that requirement? What the long court recognized is that once sovereign immunity is waived, then it becomes closer to the commoner than the Crown, that sovereign immunity is no longer part of the calculation, that Congress anticipated that State law would be an overlap to its requirements, and that in this kind of instance where you have to comply with State law in order to be able to go to Federal court, then compliance with State law should not be a means by which you no longer comply with the process, the claims processing rule that the limitations periods now are regarded as. I submit that Wong really does change the way that we have to look at this. And even if this tolling provision is not applicable otherwise, it does lay a thumb on the scale in support of equitable tolling in such a case. Well, what was the – what exactly prevented Mrs. Lucas from filing her claim on time? As the Court knows from reading the procedures in this case – To me, it was a long time elapsed. So tell me what prevented her from filing on time. The six-month period was missed by a little more than a month. That was because of – Well, you're familiar with our Rouse case, right? Yes, I am. And there we had a capital habeas case, and the deadline was missed by one day. Yes, I'm familiar with – And we said that there was no equitable tolling. But here, there was no intervening requirement in that case, as there is here, of complying with Maryland law. The Maryland law requires you to file not only with the health care office, but it also requires you to file a certificate of merit and doctor's report. Now, in the four years that it took the Navy to deny the claim – But before you move on, why does that matter? And I'm trying to explain the facts which cause this to matter. When you bring a medical malpractice case, you have to have an expert before you even file with the Navy in this instance, because these are complicated actions. You have to be able to show that there is an entitlement to – What were you doing for four years? And so – You didn't have your expert. The expert was available before we filed with the Navy. The expert became unavailable after the Navy denied the claim. During that four-year period, we don't – You could have filed suit six months after the cause of – after you gave the Navy six months to rule. After that, you could have filed your suit under federal law. But not under federal law. The federal law requires you to have gone through that health care office in Maryland. If an agency doesn't act within six months, then you can commence your claim. It's deemed to have been denied. That's true at the Navy stage of this. But it also does not have any implications here because, again, you are entitled to bring that lawsuit six months after the Navy has denied the claim. But here you – We're talking about different timelines, though. You concede that you could have brought it within six months – after six months, right? No, I am not conceding that. I'm saying that if we did not comply with the Maryland health care office's requirements, then we were not entitled to bring a case in federal court. You could have started with your whole process six months after the Navy had the action. The statute says after that, the Navy is deemed to have denied it. And you can go ahead. That's expressly intended to prevent this dragging out by agencies. So if you wanted, you could have filed your claim in the state commission, that commission, six months after. And you could have been in federal court within a few weeks. I mean, if you get your expert ready, they dispense with those decisions very quickly. But there is no requirement that anyone do so. That might be maximum feasible diligence, but it's not the kind of reasonable diligence that's required under the law. We were entitled to wait out the Navy process. While we did have the option to shortchange it, it was not a requirement of us. You could have gotten your expert right away, or you could have gotten your expert right away after the Navy decided to take it. Well, we had no knowledge that we would no longer have that expert available at the point. The question that we're asking you is, why did it take so long? And I thought you originally said we have to wait for the Navy to act. But as Judge Niemeyer has laid out, you haven't disagreed. No. After six months, you can go forward. You didn't have to wait for that. We did not have to wait for the Navy to act. We had to wait for the Maryland Health Care Office to act, is what I'm saying. Right. But you could have gone forward with your Maryland health care. But at the same time, as we said in our opening brief — You waited six months in the Maryland process. You didn't get your expert for six months. We were — our expert became unavailable. And as a result, we found a new expert. I understand why you will probably get another expert, not wait six months. We did it as quickly as we were able to do. It was still within the time limits that Maryland requires for its procedure. No, I'm not asking you whether time limits. That's what we're asking. I understand that. I'm asking you, why couldn't you have gotten your expert promptly after the Navy decided? And as I explained in our opening brief, getting an expert who qualifies, who is not — more than 20 percent of their income does not come from being an expert witness, who is qualified in the exact same fields as the allegedly negligent medical providers, is not a simple task. And it required us to go to New York University and get a professor of surgery from there to be our expert. And if I could say — you know, experience counsel has learned from this kind of a process that the longer you wait for the Navy or the administrative agency that's responsible to act, the more likely it's going to result in the approval of your claim. And so, therefore, that was part of the calculation that counsel did in not shortchanging that Navy process. But Congress gave you six months. After that process, gave you six months. And the question is, why couldn't you have conducted your affairs within the six months? And you're saying you had to go to New York, and it took you six months to get to New York to get your expert. Well, that's what I'm saying, is that it did take that time. We moved as expeditiously as we could. We filed both the expert report and the waiver of arbitration on the very same day. We didn't try to take extra time to do so. The Maryland agency issued its right for us to bring our lawsuit the following day. We acted as quickly as we were capable of doing. The fact that this process of Maryland is interposed as an in-between requirement before you can go to court is the reason why this was delayed. And we think this is a standard and, frankly, prototypical form of why equitable tolling is available. I really appreciate your comment regarding the desirability in many instances of permitting the administrative process to play out. And counsel on plaintiff's side in these cases typically are very generous. And, in fact, isn't it the case that agency counsel will delay a denial upon request in many instances if you need more time to get your ducks in a row? That may happen in some instances. In this instance, we were not forewarned. Okay. And I don't mean to be critical, but really, you have a lot of control over this six months, as we've discussed. The six months after you submit your claim, you're in virtual total control of what happens thereafter in terms of the processing rules. I submit that there's a lot less control than you assume and that much depends on who the claims officer you're dealing with is, who can be very strict about it and not want to have a conversation or not. Anybody who's taken four years to examine the claim is going to be fairly cooperative. My understanding is we went through a series of claims officers. Well, that's true, too. I will reserve the rest of my time for Rebuttal. Thank you. Ms. Farber? You got a lot of books there. I've got a lot of law on my side, Your Honor. I hope we don't have to read all that. May it please the Court. My name is Melissa Farber, Counsel for the Appalachian United States of America. Your Honors, as you're aware, this is a case about plaintiffs who misunderstood and then missed their deadline to file their Federal Tort Claims Act. The District Court correctly dismissed the case for failure to comply with the FTCA's six-month rule and correctly determined that the extraordinary remedy of equitable tolling is not available to these plaintiffs. I won't belabor the background of this case or the statutory scheme under which plaintiffs had to file since it appears the Court is well aware of how the FTCA and the Health Care Malpractice Claims Act, or HCMCA, operates. I do want to correct one misconception from plaintiffs' recitation of the facts. Plaintiffs created the impression that they had to wait. There was some requirement on them to wait for the Maryland Health Claims Office to act on their claim before they could proceed to District Court. That's not the case, Your Honors. As you're probably aware, plaintiffs controlled the process of proceeding through the Health Care Alternative Dispute Resolution Office. Could they have filed a malpractice claim without going through the Alternative Dispute Resolution in Maryland? They could have filed it. There would have been grounds to dismiss the complaint for failure to comply with the conditions of the HCMCA. Are judges staying those cases or dismissing them these days? I've seen both, Your Honor. In Anderson, for example, Judge Blake stayed the plaintiff's case while she complied with the HCMCA and then resumed it so that she wouldn't face a statute of limitations issue. It seems to me if the attorney couldn't get the response from the agency, the Maryland Commission, or whatever you want to call it, you could file your action and acknowledge that it's in the process and ask for a stay pending. It seems to me most courts would accommodate that practice, wouldn't it? That's correct, Your Honor. That is something that plaintiffs could have done. But to tack on to that, there was plaintiffs weren't waiting on H. Cadre for anything. They weren't waiting on them. The delay that plaintiffs experienced at the Health Care Alternative Dispute Resolution Office was their own delay in filing their Certificates of Qualified Expert. They weren't waiting for H. Cadre to do anything. Can I be sure I understand the present system because it's sort of evolved in Maryland? You don't have to go through the whole process. You just have to put forth an expert in these various other requirements they have. And then if you don't want to go through the health claims arbitration process, you don't have to. Is that correct? That's correct, Your Honor. The required filings are a statement of claim. Used to be mandatory. Yes. Now you're required to file a statement of claim, a Certificate of Merit, which includes a Certificate of Qualified Expert in their report. And then as soon as that is done, and all of that is within plaintiff's control, as soon as that is done, you can file for a waiver of arbitration. And that entitles you to immediately begin your case in district court. You don't have to wait for H. Cadre to do anything. It's entirely within the litigants' control. So how long does that typically take once you file the certificate and the waiver? Well, my understanding of the HCMCA is that you do not have to wait for an order of transfer from H. Cadre before you can file in district court. But in all of the cases I've seen, an order of transfer from H. Cadre has issued within several days. I'm not aware of any circumstance where it's taken longer. You make a representation when you file in federal court that you've done it, and you don't even have to wait for the order. That is my understanding. And in this case, it's academic, since the couple of days are not decisive in this case, Your Honors. So the two main issues in this case are what begins an action under 2401B, under the Federal to equitable tolling. The state of the law is pretty clear that an action is begun under 2401B by filing a complaint in district court. Well, the long court, Supreme Court, very first paragraph of the whole opinion refers to the notion of having to file in federal court. That's exactly right, Your Honor. That's exactly right. And that's consistent with the case law that we see in this circuit, both from this court and from courts in Maryland, that federal law defines limitations periods and that provision of 2401B requires a plaintiff to file a complaint in district court, and that's what begins an action. We see that, too, in Federal Rule of Civil Procedure 3, which says that an action commences by filing a complaint in district court. As Your Honors are aware, plaintiff's counsel or plaintiffs rely on state law to say that filing a statement of claim with H. Cadro, which is not a court, it's a unit of the Executive Department in Maryland, constitutes a beginning an action. But that's just not consistent with Anderson. It's not consistent with cases that have held that federal law is what defines the limitations period and not state law. And one of the things that counsel for appellants note in his argument, which I thought was interesting, is that he maintains that plaintiffs complied with every aspect of Maryland law. That's not quite true, Your Honor, because plaintiffs didn't comply with the state statutes of limitations set out in 5109A. They didn't meet the five-year statute of limitations there or the three-year statute of limitations there. So the only construction, what plaintiffs are advocating in order to find their complaint timely is sort of a, it's a Frankenstein mix of federal law and state law. They want the federal six-month rule to apply because they're not timely under Maryland's rules. But then they want this Court to look to Maryland's rules that interpret its state statutes of limitation and state cases interpreting state statutes of limitation and apply those to the federal statute of limitations, which can't be done according to cases out of this Court and the Supreme Court and the District Courts of Maryland. Your Honors, one word about Wong. As Judge Neumeier noted, all Wong really does is give you equitable tolling. It still holds that the six-month rule functions as a condition on the government's waiver of sovereign immunity, and it cites to Irwin and relies on Irwin for those propositions. And as you know, Irwin also referred to the FTCA as timely. And Irwin also referred to the FTCA's time limitations as conditions on the waiver of sovereign immunity that must be strictly construed. And we maintain that that remains the same. What's different is that plaintiffs can now get equitable tolling. Would Your Honors like me to speak to the equitable tolling issue? Well, we didn't hear much from the other side on it. It seems to me there's nothing extraordinary. It's the same in every case. In this case, it's the same. That's correct, Your Honor. And we'd refer to Menominee, which talked about how routine litigation processes are just not extraordinary circumstances. And a counsel's misunderstanding and misapplication of the law is not an extraordinary circumstance. All right. Thank you, Ms. Bartlett. Thank you. I was a little disappointed you didn't read from your books. I would be happy to, Your Honor. But you didn't drop them either. Yes. The explanation you've just heard from my friend is that reasonable diligence basically means strict compliance with the time limits. And if that is the case, then... Isn't that what we've held about time limits that are not jurisdictional? You have to comply with them. There are bars established by Congress that we have to pay attention to and give effect to. And it seems to me that we will dismiss and do dismiss actions that do not comply unless there is some good reason not to. Right. And we submit that we have followed the rules that we are required to follow in order to meet the requirement of due diligence. Now, the United States says that we didn't meet the five-year or three-year Maryland statutes of limitations, so that can't be due diligence. But, of course, this Court in Anderson said that those are not requirements when you are proceeding under the Federal Tort Claims Act. So as a result, we had no requirement to meet them. I think the argument Ms. Farber was making is that you can't have it both ways. You can't use your State law limitations because you're beyond it. So you have to use, rely on the Federal statute of limitations, which governs. But at the same time that you're relying on the Federal statute of limitations, you seem to say there's an exception to it created by State law. But with respect to due diligence, compliance with the Maryland law is a prerequisite to proceeding under the FTCA. And what I'm saying is that we complied with the requirements of Maryland law that were incorporated by the Federal statute as a substantive precondition to going to court. Now, we've heard that you can file a defective complaint in district court subject to dismissal because you have not complied with the Maryland requirement. Now, these are some recent experiments that some people have undertaken that was not warranted here, and compliance was what we were seeking to do, and that's what we did. The extraordinary circumstance is the fact that there is this Maryland procedure that is now incorporated as a part of the Federal requirements. It is part and parcel of the scheme that has to be complied with, and that supplies the extraordinary circumstances that would not be required if, for example ---- It's extraordinary about it. It is ordinary for every single case filed in Maryland. It is ordinary only in medical malpractice cases. It's not required if a Federal worker runs over somebody in the street. We'll carve out a separate area of the law and say that's extraordinary. And in those areas, plaintiffs don't have to comply with the six months? Where they are complying with a precondition that has been incorporated as part of the law, yes, that is my position. The fact of the matter is that you are required to do these sorts of things. Logan, again, v. Zimmerman, Brush, involved requiring you to go through an administrative procedure for an employment right to sue letter. The fact that the procedure took longer than the statute of limitations, they said, did not matter at the U.S. Supreme Court because, again, as a matter of due process, that was required that you have your opportunity for your day in court. I submit that we're in no different circumstance here having to comply. You were actually intending to waive the whole arbitration process. We have no ---- And if you're waiving it, then you could bypass it. You're required to waive it when the United States is a defendant. The United States does not participate in arbitration through that State agency. Didn't you file a waiver? Yes. Okay. Which we were required to do. Go through that process. And what you just cited were situations where the State process took longer. But here, it's all in your control. You could ---- you filed with the claim, and then you file your waiver, and you come out of there. Again, we are required to follow the requirements of the Maryland statute. That means an expert that comports with all the requirements they do. These are experts that are often subject to satellite litigation. So, therefore, you have to take these extraordinary steps in order to comply, in order to have that right to appear in Federal court. We submit that that's a sufficient extraordinary circumstance to warrant equitable tolling. Okay. Thank you. Good. We'll come down and greet counsel and proceed on to the last case.
judges: Paul V. Niemeyer, Diana Gribbon Motz, Andre M. Davis